UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

|  |  |  |
|---|---|---|
| ERNEST PAUL MICCICHE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:07-CV-44 / 1:03-CR-16 |
| | ) | Chief Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM**

*Pro se* petitioner Ernest Paul Micciche ("Petitioner") filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Court File No. 171). Pursuant to the Court's Order (Court File No. 173), the United States filed a response (Court File No. 174). This Court sentenced Petitioner to 66 months in prison on September 3, 2004, after he pleaded guilty to six counts of bank fraud in violation of 18 U.S.C. § 1344, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and four counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Judgment was entered on September 10, 2004, and Petitioner's conviction and sentence were affirmed on direct appeal on January 18, 2006. *United States v. Micciche*, 165 F. App'x 379 (6th Cir. 2006). After the mandate from the Sixth Circuit was entered (Court File No. 161), Petitioner timely filed his § 2255 motion with a supplemental statement on February 12, 2007 (Court File Nos. 171, 172).

Petitioner claims ineffective assistance of counsel, citing his attorney's (1) failure to clearly articulate the consequences of his plea and sentencing range, (2) inadequate review of discovery materials and failure to obtain all documents provided by the United States, (3) inexperience and

lack of understanding of Petitioner's case combined with improper delegation to an associate, (4) failure to raise the issue of prosecutorial misconduct, and (5) failure to assert Petitioner's acceptance of responsibility after he had pleaded guilty in support of his claim.

The Court finds the materials thus submitted, together with the record of the underlying criminal case (1:03-CR-0016-1), conclusively show Petitioner is not entitled to relief on any of the claims asserted in his petition. Accordingly, the Court will decide this matter without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and will **DENY** Petitioner's motion for the following reasons.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

The underlying facts supporting Petitioner's guilty plea are obtained from the agreed factual basis.

> [Petitioner] was Chief Financial Officer of Certified Environmental Group, Inc. ("Certified"), located in Berlin, New Jersey. Beginning in or about June 1999, and continuing until in or about January 2001, [Petitioner] and others submitted false, fraudulent and fictitious invoices to Alpha Financial Services ("Alpha") located in Collegedale, Tennessee, in the Eastern District of Tennessee. These invoices were used by Alpha to obtain millions of dollars from [AmSouth Bank ("AmSouth")] for the use and benefit of [Petitioner] and others. [Petitioner] created false and fraudulent invoices in the names of various companies, including Keystone Wallpaper Sales, Inc.
>
> In particular, [Petitioner] and others, submitted false invoices on the following dates which were used to obtain money from AmSouth.
>
> | Date | Company | Invoice Summary Amount |
> |---|---|---|
> | 10/02/00 | Certified | $581,281.07 |
> | | Keystone | 118,585.00 |
> | | ERGA | 506,774.00 |

2

|          |            |            |
|----------|------------|------------|
|          | Rainbow    | 400,000.00 |
|          | Management | 356,335.00 |
| 10/31/00 | Certified  | 649,786.95 |
|          | ERGA       | 103,215.00 |
|          | Rainbow    | 525,050.00 |
| 11/9/00  | Certified  | 216,706.13 |
|          | ERGA       | 308,952.80 |
| 11/21/00 | ERGA       | 427,247.65 |
| 12/4/00  | Certified  | 689,471.07 |
|          | ERGA       | 680,675.00 |
|          | Keystone   | 251,948.40 |
|          | Rainbow    | 270,000.00 |
| 12/21/01 | Certified  |  78,857.23 |
|          | ERGA       | 109,615.00 |
|          | Keystone   |  50,000.00 |

In addition to the above, [Petitioner] and others agreed to conduct financial transactions across state lines and used federally insured banks engaged in interstate commerce to promote the scheme. Beginning on or about June 1, 1999, and continuing until on or about January 2001, [Petitioner] and others, used proceeds of the above described scheme to make payments to AmSouth in order to obtain additional, future funds and to maintain a line of credit for their future use and benefit.

On or about the following dates, [Petitioner] and others conducted financial transactions in the Eastern District and Tennessee and elsewhere, pursuant to the above agreement. Each of the below-listed checks was deposited into Alpha's account at AmSouth Bank.

| Date     | Check Number | Amount     |
|----------|--------------|------------|
| 09/28/00 | 1742         | $98,000.00 |
| 10/12/00 | 1739         | 64,795.00  |
| 10/12/00 | 1740         | 39,759.00  |
| 10/12/00 | 1741         | 21,814.95  |

These checks were drawn on the account of Keystone, at the United

3

> Savings Bank, Philadelphia, Pennsylvania, the deposits of which were at all times federally insured.

(Court File No. 72).

On January 16, 2003, Petitioner was indicted in an eleven-count indictment and on November 4, 2003, he pleaded guilty to all counts. There was no written plea agreement, but the United States submitted a factual basis supporting Petitioner's plea (Court File No. 72). Petitioner agreed to the facts listed above at his rearraignment hearing, indicating he had gone over the factual basis with his attorney and all the facts represented were accurate (Court File No. 28 ("Rearraign. Tr.") pp.11-12).

The probation officer under the United States Sentencing Guidelines determined Petitioner's base offense level for the bank fraud convictions under USSG § 2B1.1(a), was six (PSR at ¶ 23). In calculating his Guideline range, the probation officer applied an eighteen-level enhancement under § 2B1.1(b)(1)(J) because the amount of loss exceeded $2,500,000 but was less than $7,000,000. After applying the multiple-count grouping provisions under § 3D1.2(d), Petitioner's offense level was increased two levels due to his money laundering convictions. § 2S1.1(b)(2)(B). After applying a three-level reduction for acceptance of responsibility under § 3E1.1(a) and (b), Petitioner's total offense level was 23 with a Guideline range of imprisonment of 46 to 57 months based on his criminal history category of I. On September 3, 2004, Petitioner filed a motion to withdraw his plea of guilty and a supporting memorandum (Court File Nos. 135, 136). Petitioner claimed after he pleaded guilty, he received additional documents which may have provided a stronger means of impeaching certain government witnesses and he pleaded guilty based on advice of counsel which is now impacted by the intervening *Blakely v. Washington*, 542 U.S. 296 (2004),

4

Case 1:03-cr-00016   Document 204   Filed 02/09/10   Page 4 of 17   PageID #: 352

decision. In support of his motion, Petitioner attached an affidavit prepared by his counsel (Court File No. 136), stating his understanding was that Petitioner "would have the opportunity to contest any figure calculated by the United States" as to the amount of loss (*id.* at ¶ 6). The Court denied Petitioner's motion to withdraw, concluding Petitioner had not demonstrated a fair and just reason to withdraw his guilty plea (Sentencing Tr. p. 24).

Petitioner's motion to withdraw was inconsistent with acceptance of responsibility, therefore the Court recalculated the Guideline range without the three-level reduction for acceptance of responsibility, yielding a Guideline range of 63 to 78 months (*id.* pp. 49-50). After sentencing Petitioner to a sentence of 66 months, the Court noted it would have selected this sentence regardless of the Guideline range calculation (Sentencing Tr. p. 62). In addition, Petitioner was ordered to pay restitution to AmSouth in the amount of $5,059,200.

Petitioner appealed his sentence, the Court's denial of his motion to transfer venue, and denial of his withdrawal of guilty plea. The Sixth Circuit affirmed the Court's rulings, and specifically noted the Petitioner "failed to maintain his innocence and . . . . admitted to the conduct charged during the plea colloquy." *Micciche*, 165 F. App'x at 384. "Micciche's assertion that he would not have pled guilty had he know the sentencing laws would change soon thereafter is the quintessential example of a tactical decision rather than an attempt to avoid the consequences of 'a hastily entered plea made with unsure heart and confused mind.'" *Id.* (citing *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). Further, the Sixth Circuit determined the loss figures did not change with the *Blakely* decision and Petitioner had agreed before the district court the facts in the factual basis supporting the guilty plea were true. *Id.* at 384-85. The Sixth Circuit also held the district court did not abuse its discretion by denying Petitioner's motion to change the venue and his

5

sentence of 66 months was not in violation of *United States v. Booker*, 543 U.S. 220 (2005). *Id.* at 386-87.

Petitioner now brings this motion under § 2255 claiming he was denied his constitutional right to effective assistance of counsel.

## II.  STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged, in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which

necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

### III.  DISCUSSION

Petitioner submitted a supplemental statement in support of his § 2255 motion asserting twelve grounds upon which he contends his counsel was ineffective. The Court has grouped these grounds as counsel's (1) failure to clearly articulate the consequences of his plea and sentencing range, (2) inadequate review of discovery materials and failure to obtain all documents provided by the United States, (3) inexperience and lack of understanding of Petitioner's case combined with improper delegation to an associate, (4) failure to raise the issue of prosecutorial misconduct, and (5) failure to assert Petitioner's acceptance of responsibility after he had pleaded guilty in support of his claim.

#### A.  Ineffective Assistance of Counsel

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

7

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

8

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Court held the two-part *Strickland* test is applicable in the context of guilty pleas. Therefore, the defendant must show defense counsel's representation fell below an objective standard of reasonableness and there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 58-59. To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir.1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir.1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under *Strickland*).

### 1. Failure to Clearly Articulate the Consequences of Plea and Underestimating Sentence

Petitioner claims his counsel "did not clearly articulate the consequences of my plea," "grossly underestimated the time I would serve in prison," and "misrepresented that I would receive

9

a certain type of sentence based on my plea and the admonitions of the United States Government" (Court File No. 172 at ¶¶ 1, 6). Any erroneous reliance on a sentencing range or confusion as to the consequences of Petitioner's plea were resolved by the Court's clear explanation of both issues at the time of Petitioner's rearraignment.

> THE COURT: The Court has been informed that you wish to plead guilty to certain of the charges against you. You have certain rights that are guaranteed to you by the United States Constitution. By pleading guilty, however, you will be giving up or waiving certain of these constitutional rights.
>
> First of all, you will be giving up the right to plead not guilty and to persist in your earlier not guilty plea.
>
> You will be giving up the right to a trial by jury.
>
> You are giving up the presumption of innocence, that is, that all persons are presumed innocent until proven guilty beyond a reasonable doubt.
>
> You are giving up the right of assistance of counsel during the trial, that is, the right to have your present counsel or some other counsel assist you at a trial of this matter.
>
> You are giving up the right to confront and cross-examine witnesses against you.
>
> You are giving up the right not to be compelled to incriminate yourself.
>
> You are giving up the right to require the United States prove you guilty beyond a reasonable doubt.
>
> You are giving up the right to issues subpoenas to compel the attendance of witnesses to testify in your defense.
>
> Do you understand that by pleading guilty you will be

giving up the rights I just enumerated?

THE DEFENDANT: Yes, Your Honor, I do.

(Court File no. 152 ("Rearraign. Tr.") pp. 3-4).

Later, the government stated the maximum penalties for each count, thirty years' imprisonment for each of counts one through six, and twenty years' imprisonment for each of counts seven through eleven (*id.* pp. 7-8). Immediately following the announcement of the penalties, the Court addressed additional consequences of the plea.

> THE COURT: You have heard Mr. Humble indicate what the maximum punishment is for these various offenses. He also indicated that the Court may order you to make restitution to any victims of this offense. In fact, if there are any victims, that is, financial victims of this offense, the Court is obligated to order you to make restitution.
>
> In addition, if the Court accepts your plea, you will be adjudged guilty of this offense, and this may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearms.
>
> Knowing these penalties, do you still wish to plead guilty?
>
> THE DEFENDANT: Yes, Your Honor.

(*Id.* p. 9).

The Court was equally explicit in dispelling any mistaken reliance on a promised sentence by either the government or Petitioner's counsel.

> THE COURT: Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. Have you and your attorney talked about how the sentencing guidelines might apply in

11

|   |   |
|---|---|
|   | your case? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Do you understand that the Court will not be able to determine the guidelines sentence for your case until after a presentence report has been completed by the United States Probation Office and you and the government have had an opportunity to challenge the facts in the report? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Do you understand that it is possible if you have prior convictions those will increase your sentence under the sentencing guidelines? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Do you also understand that after it has been determined what sentencing guidelines apply to a case, the judge has the authority, in some circumstances, to impose a sentence that is more severe or less severe than the sentence called for by the guidelines? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that I impose? |
| THE DEFENDANT: | Yes, Your Honor. |
|   | . . . |
| THE COURT: | Do you understand that if your sentence is more severe than what you expect, you will still be bound by your plea and will have no right to withdraw from your plea? |
| THE DEFENDANT: | Yes, Your honor. |

(*Id.* pp. 10-11).

Regardless of any alleged promises by his attorney as to the length of his sentence, this Court

12

went to great effort to ensure Petitioner understood his sentence would be calculated and determined by the Court and his guilty plea would be binding despite the sentence being more severe than expected. Even if Petitioner initially decided to plead guilty based on erroneous information as to his sentencing range, this does not amount to prejudice where the Court specifically informed him his Guideline range had not been determined and was not binding on the Court. *See Warner v. United States*, 975 F.2d 1207, 1211-12 (6th Cir. 1992) (finding the petitioner was not prejudiced by attorney's erroneous representations of concurrent sentences where the Court specifically informed him the attorney's advice was incorrect). Furthermore, the Court clearly explained the consequences of Petitioner's guilty plea and his acknowledgment of understanding is binding. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (statements to the court under oath carry a "strong presumption" of truthfulness and a defendant is bound by his responses in Rule 11 proceedings).

Accordingly, the Court holds these claims do not support a finding of ineffective assistance of counsel.

### 2. Inadequate Review of Discovery and Failure to Obtain Documents From the United States

Petitioner argues his counsel "did not review the discovery in this case nor adequately staff the review," failed to review additional discovery promptly, including alleged *Brady* documents, and "never made efforts to obtain all documents on my case" (Court File No. 172 at ¶¶ 2-3, 9). In his affidavit, Petitioner's former counsel, Donald Bosch ("Bosch"), states his belief the additional documents "contribute to a stronger defense theory" and "allow for stronger impeachment" (Court File No. 172-2 ("Bosch Affidavit") at ¶ 8).

As to discovery received prior to the rearraignment, the record expressly contradicts Petitioner's claims. Bosch states, under oath, "he prepared this case for trial" based on "discovery

13

provided by the government" and information at his disposal (*id*. at ¶ 4). At the rearraignment, the Court verified the Petitioner had sufficient opportunity to discuss his case with Bosch and Petitioner affirmed he had and he was satisfied with his attorney's representation (Rearraign. Tr. p. 3). Petitioner admitted to the factual basis at the time of his guilty plea. At no point has Petitioner alleged he is innocent of the actions described in the factual basis, or counsel overlooked information obtained through discovery that would have changed these facts. Petitioner moved to withdraw his guilty plea at the time of sentencing, not because of any failure by his counsel but because of the Supreme Court's decision in *Blakely*. However, as the Court indicated at sentencing, Petitioner would not have benefitted from *Blakely* because he admitted to all the facts supporting the Guideline calculations (Sentencing Tr. p. 46).

Petitioner has failed to demonstrate prejudice based on inadequate preparation by his counsel and this claim does not support relief under § 2255.

### 3. Inexperience and Improper Delegation to an Associate

In addition to his counsel's failure to adequately return calls, Petitioner contends his counsel "never understood my case," he failed to "explain to me that he did not have much experience" and an associate with almost no experience in white-collar cases was the only lawyer working on Petitioner's case (Court File No. 172 at ¶¶ 4-5,8,10). These allegations are again contradicted by the record and provide no grounds for relief. At the time, Bosch had been practicing "for approximately 17 years in both state and federal courts" and based on his "experience and training in this type of case" he strongly recommended Petitioner plead guilty (Bosch Affidavit at ¶¶ 1, 4). As discussed above, Petitioner indicated at the rearraignment he was satisfied with his counsel and agreed to the factual basis supporting the guilty plea. Petitioner's bald allegations cannot support relief as they

14

Case 1:03-cr-00016  Document 204  Filed 02/09/10  Page 14 of 17  PageID #: 362

fail to demonstrate how his counsel's experience level would have changed Petitioner's decision to plead guilty.

### 4. Failure to Raise the Issue of Prosecutorial Misconduct

Petitioner cites Bosch's failure "to raise the issue of prosecutorial misconduct on the part of the Assistant United States Attorney Gary Humble" based on "misrepresentations about my case" as evidence of ineffective assistance of counsel (Court File No. 172 at ¶ 7). Petitioner does not provide any further support for this claim other than Bosch's affidavit, which states the government would pursue "further investigation and prosecution" including "a possible investigation" into Petitioner's company for tax violations (Bosch Affidavit at ¶ 4). This potential investigation into additional charges by the government was supported by evidence described in the presentence report (PSR at ¶¶ 55-56) and would not constitute misconduct to use them during plea negotiations. *See United States v. DeJohn*, 368 F.3d 533, 545 (6th Cir. 2004) (adding a charge to the indictment after plea negotiations failed, cannot "form the substance of a viable vindictive prosecution claim").

Petitioner has not demonstrated how counsel's failure to assert a claim of prosecutorial misconduct, which was without merit, prejudiced the outcome of his case and this claim cannot support relief under § 2255.

### 5. Failure to Assert Petitioner's Acceptance of Responsibility

Finally, Petitioner contends his counsel "failed to adequately assert my acceptance of responsibility as I had pled and cooperated" (Court File No. 172 at ¶ 12). Petitioner's PSR reflected an adjustment based on acceptance of responsibility (PSR at ¶¶ 20, 38). The Court, however, recalculated the range reflected in the PSR after Petitioner moved to withdraw his guilty plea, finding it was inconsistent with acceptance of responsibility (Sentencing Tr. p. 49 (citing the

15

Application Notes of USSG. § 3E1.1)). The Court specifically offered the parties an opportunity to comment on Petitioner's acceptance of responsibility after his own "statement that he did not believe that he was guilty of the crime to which he entered a guilty plea" (Sentencing Tr. pp. 35-36). Bosch argued for acceptance of responsibility despite Petitioner's attempt to withdraw his guilty plea.

> I will say that [Petitioner] has expressed remorse a number of times for his involvement and his mistakes in this case. I think that despite his assertion of his legal rights and his thoughts as it relates to relevant conduct, that he still, at the very least, should receive the two points under acceptance. He plead timely. The result of his plea and his cooperation at least contributed to the pleas of Ishaq Samai and Bruce Marconi; that he has cooperated with the government; in fact plead guilty without the benefit of a plea agreement, despite counsel's efforts to obtain one; gave a debrief, without immunity; testified before a grand jury as it relates to this and other related matters; and assisted - - and I know Mr. Humble and I disagree greatly, but at least made some efforts to clear up the issues of loss, albeit leading to a greater dispute, not a lesser one. I think the Court should consider those factors and, as a result, give [Petitioner] the credit of two points' acceptance.

(Sentencing Tr. pp. 47-48).

Petitioner's claim his counsel failed to assert a reduction for acceptance of responsibility is directly contradicted by the record and is without merit.

## IV. CONCLUSION

None of the grounds asserted by the Petitioner support a finding his counsel's assistance was ineffective. For the reasons stated above, Petitioner's sentencing was not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No.171).

16

Case 1:03-cr-00016  Document 204  Filed 02/09/10  Page 16 of 17  PageID #: 364

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

17

Case 1:03-cr-00016   Document 204   Filed 02/09/10   Page 17 of 17   PageID #: 365